

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

GERALD C. MANN
~~ROBERT~~SON
ATTORNEY GENERAL

Honorable C. Burtt Potter
County Attorney
San Patricio County
Sinton, Texas

Dear Sir:

Opinion Number O-4858
Re: Payment of salary of school super-
intendent where school district re-
ceives rural aid.

We have received your letters of August 28, 1942 and
September 17, 1942. We quote the following from the first
mentioned letter:

"An Independent School District entered into
a two year contract on a 12 month a year salary
basis. The District paid such salary to the Super-
intendent for the first year of such contract, but
at the end of the first year, due to the scale fix-
ed in the State Aid contract with the Department of
Education, refused to pay same the second year.

"The question is, may the District pay the
Superintendent of such District on a 24 month
basis under such contract or is such contract in-
valid due to such provision in view of the fact
that the school is receiving State Aid?"

Your letter of September 17, 1942, reads, in part, as
follows:

"'The independent school district entered in-
to a two year written contract with the Supt. of
the independent school district. He served one
year under the provisions of the contract relative
to pay. The second year, he fulfilled his con-
tract with his services, however, the board re-
fused to pay him the salary provided in the con-
tract, on the grounds that the contract conflicted
with Articles 1, 2, 3, 4, 5 and 6 of the Equaliza-
tion Aid Law of Texas, cited in Public School Laws
of Texas, pages 234-237. The salary is immaterial
and the board is willing to pay the difference be-
tween the provision of such law and the contract
amount, if they may do so legally.

"'The contract having been executed and entered between the school district and the superintendent and same properly approved, same is not controversal. * * *'".

Article I of the current rural aid bill (Acts 1941, 47th Leg., R.S., Ch. 549, H.B. 284, p. 880) sets out the factors which determine whether a school is eligible to receive rural aid under the bill. Section 1 of Article 1 sets out the scholastic population requirements. Section 2 provides that no school district shall be eligible to receive aid unless it votes, levies and collects a local maintenance tax of not less than 50¢ on the one hundred dollars of property valuation, which valuation shall not be less than that for State and county purposes. We quote the following from Section 2:

"* * * The income from such a maintenance tax in excess of the required fifty cents (50¢) maintenance tax must first be used to retire indebtedness, if any, in the local and equalization (Rural Aid) school funds. After the indebtedness in these funds, if any, has been retired the income from this maintenance tax in excess of the required fifty cents (50¢) maintenance tax may be used at the discretion of the local school authorities of the district for any lawful school purposes. <u>Provided</u> that <u>no local funds may be used to increase teachers' salaries directly or indirectly above the salary schedule provided for in this Act.</u> Any or all maintenance tax above fifty cents (50¢) may not be included in the calculation of need for aid but shall be reported in the budget. * * * (Emphasis supplied).

Article III of the current rural aid bill deals with salary aid. Section 1 of Article III defines teacher-pupil quota. Section 2 reads as follows:

"Salary Schedule And Length of Term. No part of the aid herein provided shall be used for increasing the monthly salary of any teacher, except as herein authorized, and funds provided for in this Act shall be used for the exclusive purpose of extending the length of the school term of the schools situated in the district receiving such aid <u>on the basis of a schedule of teachers' salaries as determined by the State Board of Education for the school year 1938-39.</u> The annual salary of teachers in accredited

schools shall be the monthly salary as deter-
mined by such schedule multiplied by nine (9).
The annual salary of teachers in unaccredited
schools shall be the monthly salary as deter-
mined by said schedule multiplied by eight (8).
The annual salary of Superintendents of accred-
ited schools with eight (8) or more recognized
affiliated credits and entitled to six (6)
teachers or more under Section 1 of this Article,
Vocational Agriculture teachers, and Trades and
Industries teachers shall be the monthly salary
as determined by said schedule multiplied by
twelve (12). The annual salary of Home Econom-
ics teachers shall be the monthly salary as de-
termined by said schedule multiplied by ten (10).
All such authorized salaries may be paid in
twelve (12) equal payments, which shall not ex-
ceed the contract or the salary schedule, begin-
ning with September 1st of each year. Salaries
of Superintendents and Vocational teachers may
begin on July 1st rather than September 1st.
All schools of the accredited class receiving
aid shall provide a term of approximately nine
(9) months, and schools of the unaccredited
class receiving aid shall provide a term of ap-
proximately eight (8) months. An accredited school
is herein defined as a school teaching either the
elementary grades, the elementary grades plus two
(2) years of high school, or the elementary grades
and four (4) years of high school and recognized by
the State Department of Education as doing stan-
dard work. Should any school district eligible to
receive aid under the provisions of this Act main-
tain a salary schedule in excess of the salary
schedule, as determined by the State Board of Edu-
cation for the school year 1938-39, the amount of
aid received by such school district shall be re-
duced by the amount of such excess." (Emphasis
supplied).

Although we do not know the salary of the superintendent
under his contract with the district, we presume that it is in
excess of that fixed in the schedule as determined by the State
Board of Education for the school year 1938-39, mentioned in
Section 2 of Article III.

We assume that the independent school district under
consideration was incorporated under the general law and that
the laws applicable to independent school districts are appli-
cable to this district. Article 2781, Vernon's Annotated Civil

Statutes, authorizes the board of trustees of an independent district to employ a school superintendent. Said article provides as follows:

"The Board of Trustees of any city or town or any independent school district may employ a superintendent, principal, teacher, or other executive officers in the schools therein for a term not to exceed three years, provided that the Board of Trustees of an independent school district which had a scholastic population of 5,000 or more in the last preceding scholastic year may employ a superintendent, principal, teacher, or other executive officers in the schools therein for a term not to exceed five years. All twelve-month contracts made by trustees of independent school districts with employees herein mentioned shall begin on July first and end on June 30th of the year terminating the contract. Acts 1905, p. 263; Acts 1923, p. 260; Acts 1930, 41st Leg., 5th C.S., p. 123, ch. 8, sec. 1."

Thus we see that the board of trustees may employ a superintendent for a term not to exceed three years. You state in your letter that the contract was properly executed and approved. We assume that all the requirements of law were met and that the services of the superintendent under the contract were satisfactory.

We are informed by the State Department of Education that those school districts applying for rural aid are required to submit budgets showing their revenues and proposed expenditures. Then rural aid is granted to supply additional revenue to balance the approved budget and operate the school as set out under the bill. Theoretically at least, the district will have no additional funds after the items enumerated in the budget are expended. Under Section 2 of Article III, where a school district maintains a salary schedule in excess of the schedule determined by the State Board of Education the amount of such excess shall be subtracted from the amount of aid to be received by said district.

There is nothing compelling school districts to accept rural aid. Article XIV of the Act provides a penalty for violation of the terms of the Act, but such penalty applies only to the right to receive rural aid.

The fact that a superintendent's salary as set by his contract of employment exceeds the amount in the salary sched-

ule as determined by the State Board of Education would in itself in no way affect either the legality of the contract or the liability of the district under the contract. At most such fact would affect only the eligibility of the district for participation in the rural aid benefits.

Very truly yours

ATTORNEY GENERAL OF TEXAS


By s/George W. Sparks
George W. Sparks
Assistant

GWS-s-wc


APPROVED SEP 29, 1942
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/BWB Chairman